**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **TANA TELLADO**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA**,<br><br>Defendant. | : | Case No: 1:26-cv-08448<br><br>Hon.<br><br>Mag. |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Tana Tellado ("Plaintiff"), hereby brings this Collective and Class Action against Defendant The Guardian Life Insurance Company of America ("Defendant"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and common law.

2. Defendant holds itself out "as a leading mutual company, providing life and disability insurance, dental and workforce benefits, retirement and wealth solutions."[1]

3. In providing the aforementioned services, Defendant employed hourly, non-exempt employees with a number of job titles, including, but not limited to, Customer Care Associate,

---

[1] *See* https://www.guardianlife.com/about-guardian (last visited Aug.19, 2026).

Client Associate, and Member Services Specialist I & II (hereinafter collectively referred to as "Associates"). Defendant employed its Associates in brick-and-mortar locations and remotely throughout the United States. Defendant relied heavily on Associates to field and make calls, chats, and other interactions with customers, respond to and resolve inquiries, requests, and complaints, and document and log information concerning those interactions in Defendant's systems.

4. Defendant employed Plaintiff as an hourly non-exempt Associate.

5. Defendant has employed hundreds of Associates over the past three years to provide customer service support to its customers.

6. Regardless of the specific job title, all Associates: (1) were paid on an hourly basis; (2) classified as non-exempt employees; (3) regularly worked forty (40) or more hours per workweek; (4) used the same timekeeping system; (5) used many (if not all) of the same computer programs; (6) were subject to the same relevant timekeeping and attendance policies; and (7) had the primary job duty of providing assistance to Defendant's clients.

7. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's Associates, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

8. One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

9. More specifically, DOL's Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited Aug. 19, 2026).

activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

10. Throughout their employment with Defendant, Plaintiff and other Associates were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

11. Defendant violated the FLSA and common law by systematically failing to compensate its Associates for work tasks completed before and after their scheduled shifts, which resulted in Associates not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

12. More specifically, Defendant failed to compensate its Associates for the substantial time they spent performing essential work tasks prior to and after their scheduled shift start and end times each shift.

13. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and any other remedies to which they are entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

**PARTIES**

14. Plaintiff is a resident of Brooksville, Florida. Plaintiff worked for Defendant as an hourly, non-exempt remote Client Associate from approximately February 2026 through May

2026. Defendant compensated Plaintiff through the payment of an hourly rate of $18.00 per hour. Plaintiff signed a consent to join this collective action, which is attached as **Exhibit A**.

15. Additional, putative collective members were or are employed by Defendant throughout the United States as non-exempt Associates during the past three years and their Consent to Join forms will also be filed in this case.

16. Defendant The Guardian Life Insurance Company of America, is a mutual life insurance company organized and existing under the laws of the State of New York, with a principal office located at 10 Hudson Yards, New York, New York, 10001.

17. Upon information and belief, Defendant may be served with process through at its principal place of business located at 10 Hudson Yards, New York, New York 10001, in accordance with Federal Rule of Civil Procedure 4(h) and applicable New York law.

## JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

19. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

20. Plaintiff's state law claims originate from the same facts that form the basis of her federal claims. Thus, the Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

21. Defendant's annual sales exceed $500,000 and it has more than two employees, therefore the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

22. This Court has personal jurisdiction over Defendant because it conducts business within this District, employs individuals within this District, and maintains a principal place of business within this District.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant maintains a principal place of business in this District and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## GENERAL ALLEGATIONS

24. Prior to hiring prospective Associates, including Plaintiff, Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

25. Upon information and belief, Defendant maintained documents demonstrating the promised hourly wage for each Associate, including, but not limited to: offer letters, paystubs, and/or payroll records.

26. Plaintiff and the Associates received offer letters from Defendant to work as Associates, and they accepted Defendant's offers with the understanding that their base hourly rate would be paid for all hours worked.

27. Plaintiff and the Associates performed under their respective agreements with Defendant by carrying out their job duties and responsibilities. More specifically, Plaintiff and the Associates fielded inbound calls and made outbound calls to Defendant's customers; provided customer care support; handled and resolved escalated inquiries, issues, and complaints and offered appropriate solutions to the same; and maintained records of customer interactions. Plaintiff and the Associates additionally performed the required unpaid off-the-clock work explained below.

28. Defendant paid its Associates at varying hourly rates.

29. Plaintiff and Defendant's Associates typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

30. There were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

31. Defendant provided training to Associates, like Plaintiff, on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the shift and how to log out at the end of each shift; how to track their time in Defendant's timekeeping system; attendance, schedule and call quality expectations; and Defendant's policies related to each topic. The training that Defendant's Associates received was substantially, if not entirely, the same, and Defendant's Associates, including Plaintiff, were subject to the same relevant policies and procedures.

32. To the extent that Defendant had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in Associates, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

33. At all relevant times, Defendant controlled Plaintiff's and all other Associates' work schedules, duties, protocols, applications, assignments, and employment conditions.

34. Defendant required Plaintiff and all other Associates to use a computer and a variety of integral and indispensable computer programs, applications, and servers that were necessary to the performance of their job duties.

35. Defendant instructed Plaintiff and all other Associates to be "on Queue," and ready to receive calls, the moment their scheduled shifts started. This required Plaintiff and the

Associates to load and log into essential work-related computer programs and applications ***before*** the start of their shifts.

36. Defendant utilized a manual timekeeping system pursuant to which Associates were required to self-report and submit their hours worked in Verint. Although Associates started the required boot-up and login process before the start of their scheduled shifts, Defendant trained and instructed Associates to manually enter their scheduled shift start times as their "clock in" time.

37. Defendant enforced these policies through its uniform attendance, compensation, timekeeping, and schedule adherence procedures applicable to the Associates. For example, Defendant monitored its Associates' phone log-in times in relation to their manually recorded time entries in Verint, as well as the times the Associates went into an "on Queue" status to ensure Associates were prepared to take calls at the start of their scheduled shifts while only recording their scheduled shift start times in the timekeeping system.

38. Associates were routinely evaluated and at times disciplined for failure to comply with Defendant's expectations. This discipline included, but was not limited to, written warnings, verbal warnings, and termination.

39. All of Defendant's Associates used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Associates' work, and they could not perform their jobs without them.

40. Thus, Defendant required Plaintiff and its Associates to perform the boot-up and login process before the start of their shifts and before their recorded shift start times without being paid.

41. Similarly, Defendant's Associates, including Plaintiff, performed work off-the-clock after their scheduled shifts, after logging out of Defendant's timekeeping system, when they shutdown/logged out of the programs and applications that they utilized during their shifts.

42. At all relevant times, Defendant prohibited Associates from recording the pre- and post-shift tasks described herein in their hours worked. Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

43. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the Associates to require them to perform pre- and post-shift work off-the-clock.

44. The pre- and post-shift off-the-clock time Plaintiff and all other Associates spent booting up/logging into and shutting down their computers and applications and programs directly benefited Defendant and was integral and indispensable to the Associates' job responsibilities.

45. As a result of the off-the-clock work described herein, Plaintiff and all other Associates were unlawfully deprived of approximately thirty (30) to fifty (50) minutes of compensation every day.

46. At all relevant times, Defendant was able to track the amount of time Plaintiff and other Associates spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Associates for the off-the-clock work they performed, thus breaching its agreements with its Associates.

47. Defendant knew or should have known that Plaintiff and other Associates were performing this pre- and post-shift work, as it was required by Defendant's training and policies and was necessary for Associates to perform their primary job duties.

48. Despite knowing Plaintiff and all other Associates performed the pre- and post-shift

work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

49. At all relevant times, Defendant required and directly benefited from the off-the-clock work performed by Plaintiff and all other Associates in connection with the pre- and post-shift activities described herein.

50. Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

51. Defendant has known or should have known that the time spent by Plaintiff and other Associates in connection with the pre- and post-shift activities is compensable under the law.

52. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Associates booted up and logged into their computers each shift, along with the time they logged into the timekeeping system.

53. Because Defendant required its Associates, including Plaintiff, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are an inaccurate representations of the total amount of time Associates spent working for Defendant. Thus, the hours reflected on the Associates' paystubs are also inaccurate representations of the hours they actually worked.

54. Defendant's failure to pay Plaintiff and its Associates for each hour of work performed and that was required of them as Associates was a material breach by Defendant.

55. Plaintiff and all other Associates earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiff and all other Associates no later than the pay day for the period in which the off-the-clock work was performed.

56. Despite the fact that Plaintiff and all other Associates performed off-the-clock work

pre- and post-shift, these off-the-clock hours were not peripheral tasks for which they were not owed compensation. Instead, the off-the-clock hours, which were performed by Plaintiff, and all other Associates pursuant to not only their agreements with Defendant, but Defendant's verbal and/or written policies, training and direction, constituted principal work activities that were integral and indispensable to their work, and Defendant was contractually obligated to compensate its Associates for their hours worked at their applicable regular and overtime hourly rates at which they were employed.

57. Defendant, however, did not pay Plaintiff and its Associates for this compensable time. Instead, Defendant paid them based on the times entered into Defendant's timekeeping system, which reflected their scheduled shift start and end times rather than their actual hours worked. Because Plaintiff and the Associates had to load and log into essential work-related computer programs and applications ***before*** the start of their shifts and ***before*** they were allowed to log into the phone system, and had to close the programs and applications and shut down ***after*** the end of their scheduled shifts, and only record their scheduled shift hours in Defendant's timekeeping program, Plaintiff and the Associates were not paid for all hours worked, including time beginning with their first principal activity and ending with their last principal activity of the workday.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

58. Upon arriving to their computer, Defendant's Associates were trained and required to follow a specific protocol to start up and log into Defendant's network and numerous software programs to access the necessary information to perform their job duties.

59. Before each shift, Associates were required to undertake essential work tasks, which generally consisted of the following steps: turn on or wake up their computer; log into their

computer with a username and password; connect to Defendant's virtual private network ("VPN") with a username and password; and open various programs and applications that were integral and indispensable to their job duties as Associates, including, but not limited to, the Microsoft Teams, Genesys, Workday, Oracle (phone system), and Verint timekeeping system.

60. Only once all applications were open and loaded, could Plaintiff and the Associates log into the phone program and place themselves in an "on Queue" status.

61. Defendant's Associates had to complete much, if not all, of this process ***before***: (1) the start of their scheduled shifts; (2) they were allowed to log into Defendant's phone program and place themselves "on Queue"; and (3) fielding calls.

62. The boot-up and login process described above took Plaintiff and the Associates substantial time on a daily basis, ranging from twenty (20) to thirty (30) minutes per shift or more, depending on how fast/slow the computers, systems and programs were operating, and occurred before the start of their scheduled shifts. Thereafter, Plaintiff and the Associates were trained and instructed to manually enter their scheduled shift start time into Defendant's Verint timekeeping program, which was then reviewed and approved by the Associates' respective supervisor/manager.

63. The pre-shift off-the-clock work Associates performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as Associates.

64. Thus, in workweeks where Defendant's Associates worked forty (40) hours or more, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that their Associates, including Plaintiff, worked for Defendant's benefit.

65. If Associates started logging in immediately prior to their scheduled shifts, they

could not be "on Queue" when their scheduled shifts began because they could not complete the required pre-shift boot-up and login process, which negatively impacted their attendance and schedule adherence scores.

66. Because Defendant's Associates typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

67. Defendant had express and constructive knowledge that its Associates began the pre-shift boot-up and login process while off-the-clock and nevertheless required Associates to manually record only their scheduled shift start times in Defendant's timekeeping system.

68. As explained herein, Defendant's policies and practices prohibited its Associates from recording all hours worked.

69. The pre-shift off-the-clock work Associates performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities.

**B. <u>Post-Shift Off-the-Clock Work</u>**

70. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Associates were required to clock out the moment they finished fielding their last customer call for the shift and before performing post-shift work, including, checking and responding to remaining work emails; closing the programs and applications they used during their scheduled shift; reviewing, correcting and submitting their time records; clearing their computers' caches and cookies, and performing a profile tune-up and Microsoft Teams tune-up to prevent technical issues the next day; and shutting down their systems. Defendant prohibited Associates, including Plaintiff, from including the time it took them to perform their after-call-work, shutdown and log out of all computer systems, programs, and applications in their hours worked.

71. The post-shift log-out and shutdown process took Plaintiff and the Associates substantial time on a daily basis ranging from ten (10) to twenty (20) minutes per shift and occurred after the end of their scheduled shifts. Plaintiff and the Associates were trained and instructed to manually enter their scheduled shift end time into Defendant's timekeeping program, despite their performance of post-shift off-the-clock work, which was then reviewed and approved by the Associates' respective supervisor/manager.

72. Thus, in workweeks where Defendant's Associates worked forty (40) hours or more, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) record all of the time that their Associates, including Plaintiff, worked for Defendant's benefit.

73. The post-shift off-the-clock work Plaintiff and other Associates performed was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Associates' job duties and responsibilities.

**C. <u>The Off-the-Clock Work Results in Viable "Gap Time" Claims</u>**

74. "There are two types of gap time claims: pure gap time claims – when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours – and overtime gap time claims – when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate." *Athan v. United States Steel*, 354 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

75. Plaintiff, and similarly situated Associates, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

76. During the weeks that Associates did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's contracts with its Associates.

**D. Plaintiff's Exemplary Workweek**

77. The FLSA violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystub for the pay period of April 26, 2026 – May 9, 2026:

- Plaintiff worked more than forty (40) hours in one or more of the workweeks at an overtime rate of $27.00 per hour and upon information and belief was paid $27.00 per hour in overtime.
- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 30 to 50 minutes per shift at her overtime rate of $27.00 for each hour worked in excess of forty (40) in the workweek(s) in which she worked overtime.

**Ex. B**, Tellado 4/26/26 – 5/9/26 Earnings Statement.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

78. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of:

> ***All current and former hourly Associates who work or have worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

79. Defendant is liable under the FLSA, for *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

80. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

81. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

82. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the proposed FLSA Collective performed.

83. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

84. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, have worked for the benefit of Defendant.

85. Defendant's unlawful conduct has been widespread, repeated, and consistent.

86. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

87. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue — whether the amount of uncompensated pre- and post-shift off-the-clock work — does not vary substantially among the proposed FLSA Collective.

88. Plaintiff estimates the FLSA Collective, including both current and former Associates over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

89. Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

90. These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516*et seq*.

91. The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216. Unless, the Court promptly issues such notice, the FLSA Collective members, who were lawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

92. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former hourly Associates who work or have worked for Defendant at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

93. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds or thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

94. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications, and networks is compensable time under applicable law;

c. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

d. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

95. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

96. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

97. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

98. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

99. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

100. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

101. Plaintiff re-alleges and incorporates all previous paragraphs herein.

102. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

103. At all times relevant to this action, Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

104. At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

105. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

106. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

107. Plaintiff either: 1) engaged in commerce; 2) engaged in the production of goods for commerce; or 3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

108. The FLSA requires an employer to pay employees for all hours worked at the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour

worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

109. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

110. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to work off-the-clock every shift, and failed to pay these employees the federally mandated overtime compensation for all work performed over forty (40) hours per week.

111. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities was significant.

112. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regular rate of pay. 29 U.S.C. § 207.

113. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities but did not.

114. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE BREACH OF CONTRACT**

115. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

116. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

117. Evidence of these contracts includes Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Associate work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

118. For example, Defendant offered to compensate Plaintiff at a minimum of $18.00 per hour if she agreed to perform services for Defendant as an Associate. Plaintiff accepted Defendant's offer and performed her duties as an Associate in reliance on the offer.

119. Defendant breached its contractual promises by failing to pay Associates at their fixed, pre-agreed-upon hourly rate for *all* of the hours worked. This time includes hours worked before Plaintiff and the Rule 23 Nationwide Class reached forty (40) hours per week and at a rate that averaged out to more than the applicable minimum wage.

120. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, were contractually entitled to varying minimum hourly rates within the applicable period.

121. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

122. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

123. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

124. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

125. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

126. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

127. Plaintiff re-alleges and incorporates all previous paragraphs herein.

128. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

129. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

130. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

131. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

132. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

133. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

134. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class for all hours worked, including work performed in workweeks in which they worked fewer than, but

not reaching, forty (40) hours per week, and at a rate that averaged out to more than the applicable minimum wage.

135. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

136. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

137. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

138. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

a. An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff' unjust enrichment claim (Count III);

d. An Order compelling Defendant to disclose in computer format, or in print if no

computer-readable format is available, the names, addresses, phone numbers, and e-mails of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class and collective members of their rights by law to join and participate in this lawsuit;

e. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. An Order declaring Defendant's violations of the FLSA were willful;

h. An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

i. An Order declaring Defendant was unjustly enriched by the off-the-clock work performed by Plaintiff and the members of the Rule 23 Nationwide Class;

j. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m. An Order awarding such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demands trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: September 25, 2026

Respectfully submitted,

*/s/ Eric Sands*
Eric Sands
**BROWN, LLC**
111 Town Square Place, Suite 400

Jersey City, NJ 07310
(877) 561-0000
eric.sands@jtblawgroup.com

Kevin J. Stoops (P64371)*
Kathryn E. Milz (IL 6297213)*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective and Class*

**Pro Hac Vice Forthcoming*